Filed 9/26/23  P. v. Cordova CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079842 |
| v. | (Super.Ct.No. FWV22000231) |
| JOSHUA ANDREW CORDOVA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Daniel W. Detienne, Judge. Affirmed as modified, with directions.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Heather B. Arambarri and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

Joshua Andrew Cordova broke into his friend's apartment, set a fire inside, and attempted to take one of the friend's vehicles, which he succeeded in moving but not in driving away. A jury convicted him of three felony counts—arson, burglary, and taking a vehicle without consent—as well as a miscellany of misdemeanors. Cordova argues there was insufficient evidence he committed felony taking a vehicle without consent because the prosecution did not present evidence the vehicle was worth more than $950, a required element for a felony vehicle theft conviction under Vehicle Code section 10851, subdivision (a). The People concede on this issue, and we agree.

We therefore modify the judgment to reflect a misdemeanor conviction for taking a vehicle without consent and remand for a full resentencing. Our disposition moots the remaining sentencing issues Cordova raises on appeal.

# I

# FACTS

Cordova and Royce Long became friends in 2017 when they were incarcerated. After their release, Cordova visited Long's apartment a few times.

On January 19, 2022, as Long was getting ready to leave for a doctor's appointment, which he expected would require an extended stay at the hospital, Cordova showed up uninvited. Long explained he was leaving for the hospital, but Cordova did not appear to understand. Long said he thought Cordova had come over seeking to get high. Eventually, Long managed to close the apartment door without letting Cordova inside.

A little while later, Long looked out his front door and saw Cordova doing calisthenics on the lawn in front of his apartment. Long left the apartment and started walking to his Dodge Charger. Cordova followed Long and said he wanted to go with him. Long said no, but Cordova got into the passenger seat anyway. Long ordered Cordova out of his car. Cordova exited the car, and Long thought he was leaving the area.

Long then left a set of keys with his friend and neighbor, asked him to lock his apartment and watch his two dogs, and warned him about Cordova. He then drove to the hospital. The neighbor later fed Long's dogs, turned on the air conditioning, and locked the windows and doors.

Around 5:15 p.m., a second neighbor saw Cordova near Long's apartment. He asked what Cordova was doing, and Cordova said he was looking for Long. The neighbor told Cordova he should leave, and Cordova started walking toward the parking lot. But a few minutes later, the neighbor heard what sounded like an explosion and saw smoke coming from Long's apartment. He ran to the apartment to free the dogs and saw Long's bedroom window was broken. Only one dog was inside, and he escaped safely.

A third neighbor also reported seeing Cordova near Long's door around the same time. About 45 minutes later, he heard the car alarm of Long's second car, a Jeep Wrangler. The neighbor went to investigate and saw Cordova sitting in the driver's seat trying to drive the Jeep, which he said rolled backwards about 15 feet. The neighbor then noticed fire coming from Long's bedroom window. When he turned his attention back to

3

Cordova, he saw that he had left. He said he tracked Cordova down and started yelling at him but retreated when Cordova pointed a gun in his direction.

A fourth neighbor also witnessed Cordova try to steal the Jeep. She saw him walk toward the Jeep accompanied by Long's second dog. Cordova and the dog got into the Jeep, and soon after, the car alarm sounded. The Jeep rolled backward, she estimated a couple inches, but Cordova could not get the engine started, and he ran away. The second dog also ran away.

Law enforcement officers arrived at the scene and immediately found Cordova, who fled. The officers pursued and tackled him after a chase. Cordova fought with the officers, and during the struggle he said, "I'm lighting shit up like Fire Marshall Bill." The officers found on Cordova a black BB gun, which resembled a firearm, and a lighter.

An investigation revealed the apartment fire originated in the bedroom, and the flame source was likely a lighter or something similar. It was not caused by natural causes.

The San Bernardino District Attorney charged Cordova with three felony counts: (1) arson of an inhabited structure (Pen. Code, § 451, subd. (b) (count one), unlabeled statutory citations refer to this code), (2) first degree residential burglary (§ 459 (count two)), and (3) driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a) (count three)).[1] Cordova was also charged with three misdemeanor counts: brandishing a

---

[1] The district attorney also charged Cordova with a felony count of grand theft of a dog (§ 487e (count four)) but later dismissed the charge. The dog was safely returned to Long.

replica gun (§ 417.4 (count five)), battery upon a peace officer (§ 243, subd. (b) (count six)), and resisting arrest (§ 148, subd. (a)(1) (count seven)). The district attorney alleged Cordova had two strike priors (§§ 1170.12, subds. (a)-(d) & 667, subds. (b)-(i)), two serious felony priors (§ 667, subd. (a)(1)), and 12 circumstances in aggravation (§ 1170, subd. (b)(2)).

A jury convicted Cordova on all six counts. In a bifurcated proceeding, the court found Cordova had suffered the prior convictions and found four of the aggravating factors true.

On count one, the arson charge, the court imposed a sentence of 25 years to life due to the two prior strike convictions. The court stayed a sentence of 25 years to life for count two, the burglary charge, under section 654, finding the commission of the two offences were "all one single criminal transaction." The court imposed a consecutive upper term of three years for the taking a vehicle conviction (count three) and doubled it to six years due to the strike priors. The court struck punishment for the serious felony prior convictions under section 1385. The court ordered concurrent sentences of 180 days on count five and one year in jail for counts six and seven.

Cordova filed a timely notice of appeal.

## II

## ANALYSIS

A. *Reduction to a Misdemeanor of the Vehicle Code Section 10851 Conviction*

Cordova argues substantial evidence does not support his conviction for felony auto theft in violation of Vehicle Code section 10851, subdivision (a) (Section 10851) "because the prosecution failed to prove that the value of the vehicle exceeded $950.00." As a remedy, he asks that we reduce his conviction to a misdemeanor and remand to the trial court for full resentencing. The People concede the error and agree with the proposed remedy. We agree.

Voters adopted Proposition 47 in November 2014, reducing a variety of drug-possession and theft-based crimes from felonies to misdemeanors. Section 10851 prohibits taking or driving a vehicle without the owner's consent with the intent to either temporarily or permanently deprive the owner of title or possession. A range of conduct may violate Section 10851, some of it constituting theft and some of it not constituting theft. (*People v. Garza* (2005) 35 Cal.4th 866, 871.) Initially, courts disagreed on whether Proposition 47 applied to Section 10851 at all, but the California Supreme Court held that theft-based crimes fall within Penal Code section 490.2, the definition of petty theft that Proposition 47 added, which makes thefts misdemeanors unless the property stolen was worth more than $950. (*People v. Page* (2017) 3 Cal.5th 1175, 1182-1183.)

Since that decision, which issued before Cordova's trial, it has been clear "a theft-based violation of Vehicle Code section 10851 may be punished as a felony only if the vehicle is shown to have been worth over $950." (*People v. Lara* (2019) 6 Cal.5th 1128, 1136.) The standard jury instruction for Section 10851 now reflects that requirement. "To prove that the defendant is guilty of this crime, the People must prove that: [¶] <Alternative A—taking with intent to deprive> [¶] [1. The defendant took someone else's vehicle without the owner's consent; [¶] 2. When the defendant took the vehicle, (he/she) intended to deprive the owner of possession or ownership of the vehicle for any period of time; [¶] AND [¶] 3. The vehicle was worth more than $950.]" (CALCRIM No. 1820.)

The trial judge instructed the jury on the elements of the theft-based violation, but used an outdated version of the instruction, which did not include the element requiring proof of the value of the car.[2] The People concede that the prosecution presented no evidence at trial of the value of the car Cordova tried to take and in closing argument focused exclusively on establishing a theft-based Section 10851 violation without addressing the vehicle's value.

---

[2] A posttheft-driving violation of Section 10851, by contrast, may be charged and sentenced as a felony regardless of the value of the vehicle. (*People v. Bullard* (2020) 9 Cal.5th 94, 110.) To prove a defendant is guilty under "Alternative B—posttheft driving" the people must show "[1. The defendant drove someone else's vehicle without the owner's consent; [¶] AND [¶] 2. When the defendant drove the vehicle, (he/she) intended to deprive the owner of possession or ownership of the vehicle for any period of time]." (CALCRIM No. 1820.) The prosecution requested instruction under Alternative B, and the trial judge indicated he would give that instruction but ultimately instructed under Alternative A and not Alternative B.

It follows that substantial evidence does not support Cordova's felony Section 10851 conviction. However, as both parties agree, we may remedy the error by modifying the verdict to reflect a conviction for the lesser offense of a misdemeanor violation of Section 10851. (*People v Navarro* (2007) 40 Cal.4th 668, 676.) "When [a] verdict or finding is contrary to law or evidence, but . . . the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed." (§ 1181(6); see also § 1260 ["The court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense . . ."].)

Cordova concedes the evidence supports a conviction for a misdemeanor violation of Section 10851. We therefore modify the judgment to reflect Cordova's conviction on count three as a misdemeanor and remand to the trial court for resentencing.[3] The parties both contend that on remand the trial judge should conduct a full sentencing on all counts, and we agree. (*People v. Buycks* (2018) 5 Cal.5th 857, 893 ["We have held that when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing

---

[3] Given our disposition of the case, we need not address Cordova's alternative argument that his conviction should be reversed due to the trial judge's failure to instruct the jury on the value element of a felony Section 10851 charge.

discretion in light of the changed circumstances.' "], citing with approval *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1259 ["upon remand for resentencing after the reversal of one or more subordinate counts of a felony conviction, the trial court has jurisdiction to modify every aspect of the defendant's sentence on the counts that were affirmed, including the term imposed as the principal term"].)

B. *The Resentencing Remand Moots the Issues Cordova Raises with his Sentence*

Cordova argues the trial judge erred in imposing sentence because he did not understand he had discretion to sentence him on either the arson conviction (count one) or the burglary conviction (count two), while staying the sentence on the other conviction. He also argues the abstract of judgment "incorrectly reflects the imposition of punishment for two concurrent indeterminate terms when it should reflect the imposition of punishment for a single such term." Both these issues are moot due to our remand for resentencing.

On the question of the decision on which sentence to stay, Cordova argues the trial judge imposed sentence without considering the fact that staying the arson charge instead of the burglary charge would result in Cordova receiving an additional 208 days of good behavior credits. Cordova argues this decision constitutes an abuse of discretion because the trial judge did not recognize he had discretion to exercise. He asks us to reverse the

sentence and remand so the trial judge can exercise his discretion and stay punishment for the arson conviction instead of the burglary conviction.

If there was a misunderstanding of the scope of the trial judge's discretion, it is due a change in the law. Section 654 precludes multiple punishments for a single act or indivisible course of conduct and addresses how to choose which sentence to stay. (*People v. Hester* (2000) 22 Cal.4th 290, 294.) In 2021, the Legislature amended section 654 to change how trial judges choose which sentence to stay. (Stats. 2021, ch. 441, § 1; amended § 654, subd. (a), eff. Jan. 1, 2022.) Before the amendment, trial judges were directed to impose punishment under the provision providing for the longest term of imprisonment. (Former § 654, subd. (a).) Effective January 1, 2022—before Cordova's sentencing—the amended provision gives trial judges the discretion to impose punishment under any of the applicable provisions. (Stats. 2021, ch. 441, § 1; amended § 654, subd. (a).) It follows that at Cordova's September 2022 sentencing hearing, the trial judge had discretion to impose sentence on either the arson conviction or the burglary conviction.

The parties contest whether Cordova established the trial judge did not understand the scope of his discretion, whether Cordova would have been entitled to additional good behavior credits under sections 2900.5 and 2933.1 if the judge stayed the arson sentence, and whether Cordova forfeited these issues by failing to raise them at his prior sentencing. We need not decide these issues because our modification of the judgment and remand for full resentencing moots them. As the People point out, at resentencing,

10

Cordova is free to ask the trial judge to stay punishment on the arson conviction, and the trial judge has the discretion to stay the punishment on either conviction. (*People v. Buycks*, *supra*, 5 Cal.5th at p. 893.)

Though there is also an error in the abstract of judgment, it is moot. The trial judge imposed an indeterminate term of 25 years to life for count one, imposed the same punishment for count two, and stayed the sentence on count two. However, the abstract of judgment says the sentence on count two will run concurrent to the sentence on count one. "Imposition of concurrent sentences is not the correct method of implementing section 654, because a concurrent sentence is still punishment. [Citation omitted.] For this reason, the imposition of concurrent terms is treated as an implied finding that the defendant bore multiple intents or objectives, that is, as a rejection of the applicability of section 654." (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468.) The trial judge here concluded section 654 applies, so the abstract of judgment wrongly reflects imposition of concurrent sentences.

A trial judge's oral pronouncement controls where there is a conflict with statements in a minute order or an abstract of judgment, and we may correct any such errors on appeal. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) However, "[b]ecause our reversal and remand for resentencing will vacate the current abstract of judgment, the error is now moot." (*People v. Ochoa* (2020) 53 Cal.App.5th 841, 854, fn. 10.) After resentencing, the court will enter a new abstract of judgment reflecting the new sentence.

# III

## DISPOSITION

We modify the judgment to reflect a conviction for a misdemeanor violation of Vehicle Code section 10851, subdivision (a) and remand for full resentencing. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAPHAEL
J.

We concur:


RAMIREZ
P. J.


FIELDS
J.